[L.A. No. 30193. In Bank. Aug. 28, 1974.]

LEROY T., a Minor, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
COUNTY OF LOS ANGELES, et al., Respondents.

## COUNSEL

Melvin R. Burstein for Petitioner.

John H. Larson, County Counsel, Milton J. Litvin, Chief Deputy County Counsel, Marshall S. Rose, Deputy County Counsel, T. Groezinger, James J. Vonk, George S. Bjornsen and W. R. Lowndes for Respondents.

## OPINION

**TOBRINER, J.**—We resolve, in this case, a dispute concerning the amount of a workmen's compensation award. At issue is whether a juvenile court ward injured in the course of working as a firebreaker is entitled to the benefits generally provided minor county employees or whether he must settle for the minimum compensation paid adult-prisoner firefighters. Augmenting the relevant statutory language with more general policy considerations which underlie the compensation and juvenile court systems, we conclude that such a ward is entitled to compensation at the higher rate.

The parties do not dispute the principal facts. In the summer of 1969, petitioner Leroy T. was a 16-year-old court ward, a status imposed upon him apparently after he was found to have disturbed the peace. While assigned to a forestry camp in Saugus where he participated in a fire suppression training program and worked as a firebreaker, he contracted coccidiomycosis, a severe and disabling lung infection more commonly known as "valley fever."

Petitioner subsequently sought workmen's compensation benefits pursuant to Welfare and Institutions Code section 883 and Labor Code section 4455. The referee adjudged petitioner 21½ percent permanently disabled but awarded him compensation based upon the "minimum" rate prescribed by Labor Code section 4453. Claiming that he was entitled to more than minimum compensation, petitioner subsequently and unsuccessfully sought reconsideration before the Workmen's Compensation Appeals Board. We granted a writ of review.

The principal dimensions of petitioner's dispute with the board are statutory. Welfare and Institutions Code section 883, part of California's juvenile court law, provides: "Whenever any boy committed to [a forestry] camp is engaged in fire prevention work or the suppression of existing fires, he shall be subject to workmen's compensation benefits *to the same extent as a county employee,* and the [county] board of supervisors shall

provide and cover any such boy committed to such camp while performing such service, with accident, death and compensation insurance *as is otherwise regularly provided for employees of the county.*" (Italics added.)

The provisions for workmen's compensation benefits for county-employed minors are set forth in Labor Code section 4455, which was enacted prior to Welfare and Institutions Code section 883.[1] Section 4455 provides that "[i]f the injured employee is under 21 years of age, and his incapacity is permanent, his average weekly earnings shall be deemed, within the limits fixed in Section 4453, to be the weekly sum which under ordinary circumstances he would probably be able to earn at the age of 21 years, in the occupation in which he was employed at the time of the injury or in any occupation to which he would reasonably have been promoted if he had not been injured. If such probable earnings at the age of 21 years cannot reasonably be determined, his average weekly earnings shall be taken at eighty dollars and seventy-seven cents ($80.77)."[2] Eighty dollars and seventy-seven cents was the maximum weekly earnings figure then prescribed by Labor Code section 4453.[3]

Petitioner argues that these provisions afford him the right to an award based on the maximum $80.77 rate or, in the alternative, to benefits reflective of his probable earnings at age 21 as a free-laboring firebreaker or in other probable employment. (See generally *Fox Peninsula Theatre v. Indus. Acc. Com.* (1935) 3 Cal.2d 655 [45 P.2d 709].) He stresses that section 883 mandates that persons like himself "shall be subject to workmen's compensation benefits to the same extent as . . . county employee[s]" and urges that given the absence of any explicit legislative pronouncement to the contrary, this language should be accorded its everyday meaning.

The Workmen's Compensation Appeals Board, on the other hand, looks to Labor Code section 4458, subdivision (b), which prescribes that adult prison inmates injured while engaged in fire suppression activities are entitled only to the minimum benefits decreed by Labor Code sections 4452 and 4453.[4] The board takes the position that although the Legislature

[1]The Legislature amended Welfare and Institutions Code section 883 after petitioner's injury, but left undisturbed the language quoted above.

[2]Effective approximately three years after petitioner's injury, an amendment to Labor Code section 4455 replaced the thrice used phrase "21 years" with the phrase "18 years."

[3]The Legislature has since revised this figure upward.

[4]Labor Code section 4458, subdivision (b), provides: "In the case of an inmate of a penal or correctional institution who is deemed to be an employee under Sec-

did not explicitly declare that wards committed to forestry camps and injured in the course of working in fire suppression programs should receive only minimum benefits, such wards share enough in common with adult-prisoner firefighters that the Legislature would not have intended that the two classes of persons be treated dissimilarly.

■ In resolving this dispute, we begin with the observation that "the meaning of a statute must, in the first instance, be sought in the language in which the [statute] is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." (*Caminetti* v. *United States* (1917) 242 U.S. 470, 485 [61 L.Ed. 442, 452, 37 S.Ct. 192]; see also *Vallerga* v. *Dept. Alcoholic Bev. Control* (1959) 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909]; *People* v. *Sands* (1894) 102 Cal. 12, 16 [36 P. 404]; *In re W. R. W.* (1971) 17 Cal.App.3d 1029, 1033 [95 Cal. Rptr. 354].) ■ "One who contends that a provision of an act must not be applied according to the natural or customary purport of its language must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning." (2A Sands, Statutes and Statutory Construction (4th ed. of Sutherland, Statutory Construction, 1973) § 46.01, p. 49.)

Coupled with the legislative directive that workmen's compensation laws should be liberally construed in favor of persons injured in the course of employment (Lab. Code, § 3202; see generally *Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 291 [54 Cal.Rptr. 100, 419 P.2d 164]; *Pacific Emp. Ins. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 286, 289 [158 P.2d 9, 159 A.L.R. 313]; *State Compensation Ins. Fund* v. *Workmen's Comp. App. Bd.* (1970) 8 Cal.App.3d 978, 983 [87 Cal.Rptr. 770]), these canons of statutory construction dictate that we accord weight to the Legislature's command that persons like petitioner "be subject to workmen's compensation benefits to the same extent as . . . county employee[s]." General statutory language of this nature of course would give way to a more specific legislative provision that peti-

tion 3365, irrespective of his remuneration, his average weekly earnings for the purposes of determining temporary disability indemnity and permanent disability indemnity shall be taken at the minimum fixed for each, respectively, in Section 4453. Four times his average annual earnings in disability cases shall be taken at the minimum limit provided in Section 4452." Section 3365 provides that notwithstanding those provisions of the Penal Code which render prisoners ineligible for workmen's compensation (Pen. Code, §§ 2700, 2766, and 2791), persons engaged in public fire suppression activities are "employees" of the public entities which they serve and are therefore eligible for workmen's compensation.

tioner be compensated at the minimum rate,[5] but we are unaware of any such mandate.[6]

As mentioned, respondents seek to overcome the impact of Welfare and Institutions Code section 883 on the basis of an analogy between persons like petitioner and adult-prisoner fire suppressors and on the ground that the Legislature did not intend to treat similarly situated persons dissimilarly. ■ In response, we note that although we have recently witnessed increased formalization of certain procedural aspects of the juvenile system (see, e.g., *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; Welf. & Inst. Code, §§ 632, 633, 677, 700; but see *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976]), and although the character of our adult penal structure may be evolving in any of a variety of directions, the fact remains that the juvenile system is fundamentally different from the adult penal system. Non-adversary in substance, the juvenile system is designed to place the state in the status of *in loco parentis*. Its underlying philosophy is that the state assumes a protective role with respect to the juveniles over whom it gains jurisdiction.

This philosophy is reflected, in part, in the terminology employed in the juvenile system. Welfare and Institutions Code section 503 commands that "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." **(5)** California decisions reflect the view that juvenile court proceedings are in the nature of guardianship proceedings (*In re Bacon* (1966) 240 Cal.App.2d 34, 45 [49 Cal.Rptr. 322]; *In re Schubert* (1957) 153 Cal. App.2d 138, 141 [313 P.2d 968]) and are concerned primarily with the welfare of the juvenile. (*In re Florance* (1956) 47 Cal.2d 25, 28 [300 P.2d 825]; *In re Colar* (1970) 9 Cal.App.3d 613, 615 [88 Cal.Rptr. 651].) They also instruct that adjudications of juvenile wrongdoing are not "criminal convictions" (*In re Magnuson* (1952) 110 Cal.App.2d 73, 74 [242 P.2d 362]) and that the commitment of a ward to the Youth Authority is not a "sentence." (*People* v. *Wilkins* (1967) 251 Cal.App.2d 823, 829 [60 Cal.Rptr. 49].)

---

[5]Such *may* be the case with respect to adult county jail inmate and county industrial farm firefighters. (See Pen. Code, § 4125.1; Lab. Code, § 4458, subd. (b).)

[6]Labor Code section 3364.55 establishes a minimum rate of compensation for wards engaged in rehabilitation work without pay upon a resolution of the county board of supervisors that such ward is deemed an employee. The Legislature originally enacted section 3364.55 in 1968 without reference to the provisions of Welfare and Institutions Code section 883, which was enacted in 1961. Nothing in section 3364.55 suggests that the Legislature intended to affect the benefits available to camp wards who are injured in the hazardous occupation of fire suppression.

The more benign and flexible philosophy of the juvenile system is further manifested in the varied dispositional options available to its several decision-makers. A typical juvenile case (see Boches, *Juvenile Justice in California: A Re-Evaluaton* (1967) 19 HastingsL.J. 47, 49-50) begins with the apprehension of the minor by a police officer. Welfare and Institutions Code section 626 'prescribes that consistent with the minor and community's best interests, the officer may choose to release the youth, direct him to a probation officer, or deliver him to such an officer personally. The probation officer, in turn, commands several dispositional options; among others, he may release the youth (cf. Welf. & Inst. Code, § 653), undertake a program of informal supervision (*id.*, § 654), or institute formal juvenile court proceedings. (*Id.*, §§ 652, 653, 656.) Should the probation officer choose the latter course, the juvenile court itself retains several alternatives; if it determines it has jurisdiction, among other options it may permit the juvenile to remain at home under the supervision of a probation officer (*id.*, § 725), place the youth in a foster home, private institution (*id.*, § 727), or, in some instances, a county ranch, camp, or home (*id.*, § 730), or commit the juvenile in other instances to the California Youth Authority. (*Id.*, § 731.)

Although the adult criminal justice system is not wholly devoid of analogous elements and although adult-prisoner firefighters indeed are beneficiaries of serious attempts to achieve flexibility and rehabilitation, the differences between the juvenile and adult structures explain why the Legislature has taken special precautions to make sure that young persons assigned to the hazardous task of suppressing fires are fully protected in case of injury. The language of section 883 explicitly provides for such protection by means of plenary workmen's compensation. Intended as a means to help juveniles achieve productive futures (cf. *Ex parte Ah Peen* (1876) 51 Cal. 280, 281), the juvenile system may fail in its purpose if it releases youths into society injured while participating in mandatory work programs who have been inadequately compensated therefor. (Cf. 1A Larson, Workmen's Compensation (5th ed. 1973) § 47.31, p. 8-156; Note, *Granting Workmen's Compensation Benefits to Prison Inmates* (1973) 46 So.Cal.L.Rev. 1223, 1232-1238.)

In affording full compensation to juveniles injured while participating in fire-fighting programs, the Legislature recognized its higher obligation to youths as contrasted with adult prisoners. It recognized that 'the state has undertaken the responsibility of wardship for juveniles and realized that if the state assigns juveniles to hazardous duties, it should at least afford them the measure of protection reflected by full compensation in case of injury. ■ Juveniles situated similarly to petitioner are "sub-

ject to workmen's compensation benefits to the same extent as a county employee" (Welf. & Inst. Code, § 883), and are thus entitled to benefits calculated as prescribed by Labor Code section 4455.[7]

We annul the decision of the Workmen's Compensation Appeals Board and remand the case for proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

---

[7]Respondent County of Los Angeles would have us deny petitioner relief *even applying* Labor Code section 4455 on the ground that petitioner's earnings would have remained "minimum" when he reached 21 even had he not sustained injury. Since the Workmen's Compensation Appeals Board denied reconsideration on the ground that Labor Code section 4458, subdivision (b), dictates that petitioner receive minimum compensation, the board had no reason to examine the evidence allegedly supportive of this review. On remand, the county remains free to press its argument.