[Civ. No. 53930. Second Dist., Div. Five. Mar. 15, 1979.]

NATIONAL AIRCRAFT LEASING, LTD., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Marvin Zinman for Plaintiff and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Philip C. Griffin, Richard E. Nielsen and Lawrence D. Keethe, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—Plaintiff and appellant, National Aircraft Leasing, appeals from a judgment of the superior court in favor of defendant and respondent, the State Board of Equalization of the State of California. Appellant sought recovery in superior court of sales or use taxes paid under protest by appellant's assignor, National Airmotive Corporation. Both parties moved for summary judgment. The court denied appellant's motion and granted respondent's motion, on the grounds that the action had no merit and there was no triable issue of fact. Appellant moved for a new trial and the motion was denied.

### FACTS

During the transaction in question, appellant, National Aircraft Leasing (hereinafter referred to as NAL), was engaged in the business of leasing transport category aircraft which were owned by NAL. One such aircraft, a four-engine Lockheed Hercules, was on exclusive lease to Saturn Airways, a common carrier of persons or property for hire under the laws of the United States in interstate and foreign commerce. During the lease period, NAL and Saturn agreed that the aircraft would be modified to increase its load carrying capacity. As part of this modification, the engines also would be modified to increase their power.

The modification work on the engines was done by National Airmotive Corporation (hereinafter referred to as NAC), a firm based in Oakland, California. The engines were removed from the plane, delivered to NAC, and reinstalled on the plane when the modification was completed. Respondent, the State Board of Equalization (hereinafter referred to as Board), levied a sales or use tax of $12,446.54 on NAC measured by the gross receipts derived by NAC for the modification work. NAC paid the tax under protest and was reimbursed therefor by NAL pursuant to an agreement between the parties. NAC assigned its refund claim to NAL and NAL's claim for a refund was denied by the Board. NAL brought an

action in superior court to recover the tax. NAL and the Board moved for summary judgment and the motion of the Board was granted.

## DISCUSSION

The facts of the case are not disputed and the basis of appellant's case is that the lower court committed an error of law by interpreting a particular tax exemption statute so as to exclude the transaction herein considered from its coverage. We must therefore examine the law in question and its applicability to the facts.

Appellant contends that the engine modification work performed by NAC was exempt from sales and use taxes under Revenue and Taxation Code sections 6366 and 6366.1, subdivision (a), which read as follows:

"6366. There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption of aircraft sold to persons using such aircraft as common carriers of persons or property under authority of the laws of this state, of the United States or any foreign government, or sold to any foreign government for use by such government outside of this state, or sold to persons who are not residents of this state and who will not use such aircraft in this state otherwise than in the removal of such aircraft from this state.

"6366.1 . . . (a) There are exempted from the taxes imposed by this part, the gross receipts from the sale of and the storage, use, or other consumption in this state of aircraft which are leased, or are sold to persons for the purpose of leasing, to lessees using such aircraft as common carriers of persons or property under authority of the laws of this state, of the United States or any foreign government, or to any foreign government as lessees for use by such government outside the state, or to persons as lessees who are not residents of this state and who will not use such aircraft in this state otherwise than in the removal of such aircraft from this state."

Saturn Airways, the lessee of the plane owned by appellant, was a common carrier as described in the code sections. The issue then, is whether the transaction herein considered was the sale, use, or other consumption of aircraft. To bring its transaction within the statute appellant relies on *Pan Amer. W. Airways* v. *State Bd. Equal.* (1955) 131 Cal.App.2d 638 [281 P.2d 23], and *Flying Tiger Line* v. *State Bd. of Equal.*

(1958) 157 Cal.App.2d 85 [320 P.2d 552]. These cases introduced the concept that "aircraft," as used in the statute, included the "integral parts" thereof so as to exempt them also from the otherwise applicable tax. We will examine these cases in greater detail later.

We must first examine the events in question, and determine what kind of tax was imposed on what transaction. The agreement between appellant and NAC was for "modification" of the engines of the plane leased to Saturn. This presumably requires some new parts and the necessary labor to install them on the engines. It was the gross receipts of NAC for these parts and the associated labor on which respondent levied a tax. By definition then, the tax was a sales tax and not a use tax. A sales tax is one imposed on the gross receipts from the sale of tangible personal property in this state, and gross receipts includes any services which are a part of the sale. (Rev. & Tax. Code, §§ 6051, 6012.) Appellant does not dispute that such a taxable event took place, but argues only for the application of a statutory exemption thereto.

As stated *ante* appellant's case depends upon an extension of the meaning of the word "aircraft" as it is used in the Revenue and Taxation Code, sections 6366 and 6366.1, subdivision (a), to include the parts and related services sold to appellant in the course of modification of the engines. Appellant's authority for such an extended meaning is found in the two previously cited cases, *Flying Tiger* and *Pan American,* both of which have similar fact situations: Parts were installed on an airplane outside of California; the parts were necessary for certification of the aircraft by the Federal Aviation Administration; the plane (with parts attached) was flown into this state and used within this state; and the State Board of Equalization levied a use tax on the parts in question. In both cases, a court of appeal found that the parts were "integral parts" of an aircraft and were entitled to the exemption from use tax provided by Revenue and Taxation Code, section 6366. (*Pan Amer. W. Airways* v. *State Bd. Equal., supra,* 131 Cal.App.2d 638, 642; *Flying Tiger Line* v. *State Bd. of Equal., supra,* 157 Cal.App.2d 85, 100.)

Appellant contends that *Pan American* and *Flying Tiger* are determinative in the present case because the tax which appellant disputes was imposed on the modification of aircraft engines, those engines were integral parts of an aircraft leased to an appropriate common carrier at the time the work was done, and integral parts of aircraft are exempt from sales and use tax. Appellant stresses that the engines remained

integral parts of the particular aircraft, even though removed therefrom, as those engines were necessary for certification of the aircraft by the Federal Aviation Administration. Appellant also notes that the same engines were removed, modified, and replaced on the aircraft, as opposed to being taken from a general inventory of replacement engines; that is, the particular engines never became disassociated from the particular plane. Omitted from this part of the argument is the change in the engines which took place by the very modifications which form the taxable issue here. We find that appellant's focus is misplaced. The transaction on which a sales tax was imposed was not the sale of engines, but rather the sale of parts and related services for modification of those engines. The distinction is important. We might decide that the engines were and remained integral parts of the aircraft at all times, but it is clear that the same cannot be said for the parts which were installed on those engines in the course of modification. They were tangible personal property, disassociated from the aircraft, and only became integral parts thereof at some later time. Also, the very change in parts is what made the reinstalled engines different from those originally removed for modification work. Focusing on the parts and not the engines, we must decide the applicability of *Pan American* and *Flying Tiger* to the present case. The fundamental distinction we note is that those two cases, as they are cited as authority by appellant, involved a use tax and the present case involves a sales tax. A use tax is imposed on the use within this state of tangible personal property purchased outside this state. (Rev. & Tax. Code, § 6201.) A sales tax is imposed on the gross receipts for the sale of tangible personal property within the state. (Rev. & Tax. Code, § 6051.) As stated *ante* the two cases relied on by appellant held that aircraft parts purchased out of state, and installed on an aircraft which is *then* flown into this state, are exempt from *use* tax under Revenue and Taxation Code section 6366, if those parts are integral parts of the aircraft for interstate or foreign use upon its arrival in this state. We cannot accept appellant's argument for direct application of those rulings to the substantially different circumstances of the present case, so as to exempt from *sales* tax, aircraft parts which are sold in this state and which, upon installation on aircraft in this state, become integral parts of that aircraft. Furthermore, we will not use the tax rulings in those cases as a basis for a similar judicial extension of Revenue and Taxation Code sections 6366 and 6366.1, subdivision (a), to exempt integral parts in the sales tax situation. Our reasons follow.[1]

---

[1]Respondent asserts that a fundamental distinction between the two cited cases and the present case is that in the former, the parts were integral to the aircraft at the time of the

First, a ruling in *Flying Tiger* concerning a transaction other than the one we have heretofore considered (as argued by appellant) indicates that the integral parts concept is not applicable to the sales tax situation. This portion of the ruling involved a sales tax imposed on the price of material used to overhaul and repair some airplanes sold to a Spanish airline by Flying Tiger Lines, Inc. The court determined that the work was done by Flying Tiger's plant in California, that the sale of the parts took place in California, that the parts became integral parts of the airplanes, and that the parts and airplanes were sold to an appropriate common carrier as defined in Revenue and Taxation Code section 6366. (*Flying Tiger Line* v. *State Bd. of Equal.*, *supra*, 157 Cal.App.2d 85, 88-93.) The court found that a sales tax on the gross receipts for the sale of the parts was properly imposed in this situation.[2] (*Ibid.*) Insofar as its application to the present case is concerned, we find this aspect of the *Flying Tiger* decision to be more pertinent than that emphasized by appellant.

■ Second, our perception of the legislative intent behind Revenue and Taxation Code sections 6366 and 6366.1, subdivision (a), tells us that these exemption statutes were meant only to exempt *aircraft* in the described situations, and not to exempt parts installed on such aircraft in the course of repair or modification. There is abundant evidence to support this interpretation:

a) "Aircraft," as used in the Revenue and Taxation Code, is defined as ". . . any powered contrivance designed for navigation in the air except a rocket or missile." (Rev. & Tax. Code, § 6274.) Since tax exemption statutes must be strictly construed against the taxpayer (*Garrett Corp.* v. *State Board of Equal.* (1961) 189 Cal.App.2d 504, 509 [11 Cal.Rptr. 421]; *Bay Cities Transp. Co.* v. *Johnson* (1937) 8 Cal.2d 706, 712 [68 P.2d 710]), it would seem that "aircraft" is not to be interpreted to include replacement parts thereof.

---

taxable event (arrival of the aircraft in this state); while in the latter, the parts only became integral to the aircraft after the taxable event (transfer of title to the parts). We point out that this is not necessarily so. Title to the parts used in the modification may or may not have passed to the buyer prior to the integration of those parts into the aircraft, depending upon the nature of the agreement between the parties. (See Cal. U. Com. Code, § 2401 et seq.) The details of that agreement are not part of the record on appeal.

[2]It should be noted that the appellant in *Flying Tiger*, in contesting the sales tax in question, did not argue that the transaction was exempt under Revenue and Taxation Code section 6366, but rather raised other issues regarding the taxability of the transaction.

b) Revenue and Taxation Code section 6366.1, subdivision (b), exempts from sales and use taxes, ". . . tangible personal property sold to an aircraft manufacturer and incorporated into aircraft to be leased by the manufacturer . . . ." Since appellant was not an aircraft manufacturer and the aircraft in question was not one "to be leased" but rather was already under lease to Saturn Airways, this subdivision of the statute does not apply. The subdivision does, in fact, adversely affect appellant's case because it impliedly excludes tangible personal property (parts) from exemption in situations other than the one described.

c) Revenue and Taxation Code, sections 6368 and 6368.1 are watercraft exemption statutes which parallel the aircraft exemption statutes, Revenue and Taxation Code sections 6366 and 6366.1, subdivision (a), with one notable distinction.[3] The watercraft statutes contain specific language extending the exemption to ". . . tangible personal property becoming a component part of such watercraft in the course of constructing, repairing, cleaning, altering, or improving the same, and charges made for labor and services rendered in respect to such constructing, repairing, cleaning, altering, or improving." Revenue and Taxation Code section 6368 was enacted prior to section 6366.1, subdivision (a), indicating that the latter (the aircraft statute) was enacted with a legislative awareness of the component parts situation, but with a conscious choice not to exempt them for aircraft. (Rev. & Tax. Code, § 6368. added by Stats. 1949, ch. 1204, § 1, p. 2120; Rev. & Tax. Code, § 6366.1, added by Stats. 1964, 1st Ex Sess. ch. 88, § 1, p. 276.)

[3] Revenue and Taxation Code sections 6368 and 6368.1 read as follows:

"§ 6368. Gross receipts from sale, etc., of watercraft for use in interstate and foreign commerce. There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this State of watercraft for use in interstate or foreign commerce involving the transportation of property or persons for hire or for use in commercial deep sea fishing operations outside the territorial waters of this State, and any sales of tangible personal property becoming a component part of such watercraft in the course of constructing, repairing, cleaning, altering, or improving the same, and charges made for labor and services rendered in respect to such constructing, repairing, cleaning, altering, or improving."

"§ 6368.1. Exemption where watercraft are to be used by lessees for commercial deep sea fishing operations. There are exempted from the taxes imposed by this part, the gross receipts from the sale of and the storage, use, or other consumption in this state of watercraft which are leased, or are sold to persons for the purpose of leasing, to lessees using such watercraft in interstate and foreign commerce involving the transportation of property or persons for hire or for use in commercial deep sea fishing operations outside the territorial waters of this state, and any sales of tangible personal property becoming a component part of such watercraft in the course of constructing, repairing, cleaning, altering, or improving the same, and charges made for labor and services rendered in respect to such constructing, repairing, cleaning, altering, or improving."

Furthermore, Revenue and Taxation Code section 6368.1 (watercraft) was enacted in 1965 and in that same year, section 6366 et seq. (aircraft) were amended. (Rev. & Tax. Code, § 6368.1, added by Stats. 1965, ch. 1292, § 1, p. 3177; Rev. & Tax. Code, § 6366, amended by Stats. 1965, ch. 1480, § 1, p. 3499.) The watercraft statute included the above "component parts" language, while the aircraft statute was left devoid of such language. Here again is an indication that the Legislature did not intend to exempt component parts of aircraft.

We conclude from the above analysis that Revenue and Taxation Code sections 6366 and 6366.1, subdivision (a), do not confer sales tax exemption on the gross receipts from the sale in this state of tangible personal property thereafter becoming component parts of aircraft which have already been sold, leased, or sold for the purpose of leasing, to persons using such aircraft as common carriers of persons or property under the conditions set forth in those statutes. Sales tax immunity in such situations, if it exists, must be found in other provisions of the Sales and Use Tax Law. Based on this conclusion, we find that the gross receipts for the modification of the engines of the aircraft owned by appellant and leased to Saturn Airways, were properly subjected to a sales tax.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.