[No. B043088. Second Dist., Div. Three. Mar. 14, 1990.]

PURDUE FREDERICK COMPANY, Plaintiff and Respondent, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Carol H. Rehm, Jr., Deputy Attorneys General, for Defendant and Appellant.

Michael K. Collins and Greenberg, Glusker, Fields, Claman & Machtinger for Plaintiff and Respondent.

OPINION

ARABIAN, J.—

### INTRODUCTION

This appeal concerns the tax exempt status of the sale of Betadine Surgical Scrub (Betadine), an antiseptic, microbicidal, sudsing skin cleanser, manufactured by plaintiff and respondent the Purdue Frederick Company (PFC). PFC distributed and sold Betadine to hospitals in California for preoperative use on patients, preoperative scrubbing by doctors, nurses and other operating personnel and for hand cleansing by hospital personnel caring for and treating patients.

Defendant and appellant State Board of Equalization of the State of California (the Board) determined that Betadine was not a "medicine" for purposes of exemption from taxation pursuant to Revenue and Taxation Code section 6369,[1] subdivision (a)(4), and Sales and Use Tax Regulation 1591 (Cal. Code Regs. tit. 18, § 1591) (Regulation 1591), except when applied to patients. PFC paid the tax under protest, contending that the other uses also qualified for the exemption. PFC exhausted its administrative remedies and filed an action for a sales tax refund. The trial court found in PFC's favor awarding a refund plus accrued interest. The Board appeals.

We find that Betadine is a "medicine" for purposes of section 6369, exempt from sales taxation, and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

PFC is a New York corporation with its principal place of business in Norwalk, Connecticut.

The Board notified PFC that a deficiency in sales and use taxes was due for the period commencing October 1, 1979, and ending September 30, 1982. PFC sought redetermination of this issue, contending that the exemption for sales of "medicines" applied. The Board issued a notice of redetermination resulting in no adjustment, and notified PFC that the amount of tax deficiency and interest due was $18,301.19, plus additional interest until paid. The Board explained that it interpreted the statutory phrase "application to the human body," to mean application to the patient's body only.

---

[1] All subsequent statutory references are to the Revenue and Taxation Code unless otherwise indicated.

PFC paid the amount plus accrued interest and filed a claim for refund. The Board denied the claim and PFC filed this action.

The matter was tried before the trial court under an agreed statement of facts, pertinent portions of which are set forth below.

"[Betadine's] use removes and kills bacteria, fungi, viruses, protozoa and yeasts that are present on hands and other skin areas. Its active antimicrobial ingredient is povidone-iodine.

"[ ] The federal Food and Drug Administration ('FDA') has officially classified povidone-iodine handwashing products as a drug. . . .

"[ ] Betadine Surgical Scrub is purchased by hospitals for three principal uses:

"(a) Preoperative use on patients, particularly the body area intended for surgery, to prevent disease, contamination and infection;

"(b) Preoperative scrubbing by doctors, nurses and other operating personnel to protect both the patient and surgical team members from contamination and infection and to prevent disease in the patient or the surgical team which could be caused by pathogenic organisms on the skin;

"(c) Use as an antiseptic, germicidal skin cleanser for handwashing by hospital personnel caring for and treating patients to prevent infection, contamination and the spread of disease among the patients and to hospital staff.

"The Board . . . found that Betadine Surgical Scrub was used [as a preoperative cleanser on the bodies of patients] 20% of the time and that 20% of PFC's sales of Betadine Surgical Scrub to California hospitals were therefore exempt from taxation. . . .

"[T]he Board further found that the other two principal uses of Betadine Surgical Scrub (as a preoperative surgical scrub to sterilize surgical personnel and as a skin cleanser by other hospital personnel) were not exempt from sales and use taxation as a 'medicine.'. . .

"[ ] In hospitals, Betadine Surgical Scrub is used in greatest quantities in the required sterile procedures of the surgical team, in preoperative scrubbing to degerm the hands. The use of an effective antiseptic scrub to prevent disease and infection to patients and to surgical team members is a medical

necessity and a required procedure commonly recognized and required by hospitals of their surgical personnel.

"[ ] For more than a century, handwashing has been a universally accepted practice to reduce contact transmission of microorganisms. It is recognized as one of the few infection control practices with clearly demonstrated efficacy and is one of the primary methods used in hospitals to reduce risk of infection. . . .

"[ ] Based on many studies and observations, investigators have concluded that the hands of personnel are a major potential means of transmission of germs in hospitals. In some recent hospital trials, infection rates were cut almost in half when staff used antiseptic, germicidal handwashing products as compared with plain soap.

"[ ] Detergent (plain soap) with water can physically remove microbes (germs), but antiseptic agents are necessary to kill them. The primary action of plain soap is the removal of foreign oganisms by mechanical friction. The primary action of antimicrobial cleansers includes both mechanical removal and chemical killing or inhibition of both contaminating organism and colonizing flora. . . .

"[ ] In addition to their bactericidal effect on microorganisms, a second characteristic that sets certain antiseptics (including povidine-iodine) apart from plain soap is the ability to sustain a continuing, persistent chemical activity on skin. . . . This characteristic of persistence enhances continued antimicrobial activity when it is not possible to wash the hands during prolonged gloving.

"[ ] The [Association for Practitioners in Infection Control] Guidelines recommend that health care personnel use a handwashing product containing iodophors (such as Betadine Surgical Scrub) before and after patient contact when viruses are of particular concern, such as during blood drawing or dressing changes. The Guidelines further recommend iodophor-containing products for use in a five-minute hand scrub by the surgical team prior to surgery and for pre-operative patient skin preparation."

The trial court found Betadine a "medicine" exempt from taxation, awarding PFC a refund of the taxes paid. The Board appeals.

ISSUE

Is Betadine a "medicine" for the purposes of exemption from taxation pursuant to Revenue and Taxation Code section 6369 and Regulation 1591

subdivision (a)(4) when intended for use on hospital personnel rather than directly on patients?

DISCUSSION

1. *Standard of Review*

■ The issue before this court is a question of law, the construction of a statute. Accordingly, the Board's interpretation of section 6369 and regulation 1591, which is functionally identical to the statute, is subject to broad judicial review. (*Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60 [219 Cal.Rptr. 142, 707 P.2d 204].) " '[W]hile an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts. [Citations.]' " (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

2. *Section 6369 and Regulation 1591*

Section 6369, subdivision (a)(4) provides for the exemption from taxation receipts from the sale in California of "medicines" "[s]old to a . . . health facility for the treatment of a human being."[2] The taxes in question were assessed in connection with sales to hospitals, which the parties stipulated were "health facilities" within the meaning of the relevant provisions.

"Medicines" are defined by the statute to mean "any substance or preparation intended for use by external or internal application to the human body in the diagnosis, cure, mitigation, treatment or prevention of disease

---

[2] The full text of section 6369, subdivision (a) is as follows: "(a) There are exempted from the taxes imposed by this part the gross receipts from the sale, and the storage, use, or other consumption, in this state of medicines:

"(1) Prescribed for the treatment of a human being by a person authorized to prescribe the medicines, and dispensed on prescription filled by a registered pharmacist in accordance with law.

"(2) Furnished by a licensed physician and surgeon, dentist, or podiatrist to his or her own patient for treatment of the patient.

"(3) Furnished by a health facility for treatment of any person pursuant to the order of a licensed physician and surgeon, dentist, or podiatrist.

"(4) Sold to a licensed physician and surgeon, podiatrist, dentist, or health facility for the treatment of a human being.

"(5) Sold to this state or any political subdivision or municipal corporation thereof, for use in the treatment of a human being; or furnished for the treatment of a human being by a medical facility or clinic maintained by this state or any political subdivision or municipal corporation thereof."

and which is commonly recognized as a substance or preparation intended for that use."[3]

Regulation 1591 simply parallels the provisions of section 6369, employing the same terminology to define exempt medicines.

### 3. *Betadine*

The facts establish that Betadine is a "substance or preparation" which is "intended for use by . . . external application to the human body . . ." in the preoperative use on patients, the preoperative scrubbing by doctors, nurses and other operating personnel, and for hand washing by hospital personnel caring for and treating patients. Because of its antiseptic, germ killing properties, it is intended for use in both the "mitigation" and "prevention" of disease.

Betadine also satisfies the definitional requirement that it be "commonly recognized as a substance or preparation intended for that use." It was stipulated that the use of an effective antiseptic scrub, such as Betadine, "is a medical necessity and a required procedure commonly recognized and required by hospitals of their surgical personnel." Indeed, in finding that Betadine is a tax exempt medicine when used on patients, the Board in effect conceded that it falls within the definition of medicine in section 6369, subdivision (b).

A "medicine" as defined subdivision (b) is exempt from taxation if, among other things, it is sold to a "health facility for the treatment of a human being." (§ 6369, subd. (a)(4).) The Board argues that this subdivision allows tax exemption only for medicines ordered for the treatment of patients. Subdivision (a)(2) exempts medicines "furnished by a licensed physician and surgeon, dentist or podiatrist to his or her own patient for treatment of the patient." However, subdivision (a)(4) employs the broader term "human being," evidencing a legislative intent to expand the exemption in the health facility context. Furthermore, even when applied by hospital personnel to their own bodies, it is undeniable that its germicidal effect benefits the patient and constitutes a critical component of the patient's treatment.

---

[3] The definition expressly excludes "[a]ny auditory, prosthetic, ophthalmic or ocular device or appliance"; articles such as splints and bandages, et cetera; and alcoholic beverages (subds. (b)(1), (2) and (3)). Notwithstanding the definition, certain listed items are also "medicines" subject to exemption. These include such items as sutures, bone screws, orthotic devices, prosthetic devices, artificial limbs and eyes, and programmable drug infusion devices. (Subd. (c).)

The Board's suggested definition of the word "treatment" as "the application of remedies to effect a cure" is too narrow, conflicting with subdivision (b) which refers to "application to the human body in the diagnosis, cure, mitigation, treatment or prevention of disease."[4]

The Board also contends that the statute contemplates tax exemption only for prescription or controlled medicines, pointing out that this intent is explicit in the official title of Regulation 1591 as "Prescription Medicines." The title to Regulation 1591 carries no weight for two reasons. The first is that the Board promulgated the regulation in order to implement the statute; the regulation cannot legitimately effect a change in the statute contrary to the Legislature's intent. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817 [201 Cal.Rptr. 165, 678 P.2d 378].) Secondly, when Regulation 1591 was first promulgated, section 6369 was more restrictive than its current version, applying to prescription medicines only.[5]

As originally enacted in 1961, section 6369 was limited to an exemption for medicines now contained in subdivision (a)(1), those prescribed by an authorized person and dispensed on prescription. (Stats. 1961, ch. 866 § 1, p. 2273.) In 1962, the Legislature added those exemptions now contained in subdivisions (a)(2) and (3), medicines supplied to his own patients by a physician and surgeon or podiatrist, and prescribed medicines furnished to patients in a county or licensed hospital. (Stats. 1962, ch. 7 § 1, p. 12.)

In 1963, the Legislature restructured section 6369 by numbering the different types of exempted medicines, adding the exemptions contained in subdivisions (a)(4) and (a)(5) and changing the definition of medicines.[6] The substance of these additions and the language employed (Stats. 1963, ch. 716, § 1), especially side by side with the preexisting exemptions, evidence a clear legislative intent to expand the scope of exempt "medicines."[7]

---

[4] The dictionary defines "treatment" as "the act or manner or an instance of treating someone or something: HANDLING, USAGE"; "the techniques or actions customarily applied in a specified situation"; "a substance or technique used in treating." "Treat" is defined, in a relevant sense, as "to care for or deal with medically or surgically" and "to act upon with some agent esp. to improve or alter . . ." (Webster's New Collegiate Dict. (9th ed. 1983) p. 1257.)

[5] Indeed, an amendment to Regulation 1591 in 1989 changed the official title of the regulation to "Medicines and Medical Supplies, Devices and Appliances" to conform with the statute. (Register 89, No. 36, Cal. Code Regs.)

[6] The definition of "medicines" previously included "any drug defined pursuant to Section 4031 of the Business and Professions Code," which itself included "articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals," as well as other articles.

[7] The Board's determination that 20 percent of the Betadine sold to hospitals, that portion applied to patients, is exempt pursuant to section 6369 is contrary to the Board's position that section 6369 is limited to prescription medicines.

The Board asserts that if Betadine sold to hospitals is tax exempt, then sales of other nonprescription items such as mouthwash, antacids and aspirin, are similarly exempt. We simply observe that the Board has previously ruled that the exemption is applicable to sales to hospitals of baby powder and lubricating jelly (Business Taxes Law Guide, Sales & Use Tax, Annot. 425.0180, June 10, 1965), Diaperene powder, baby oil, and ethyl alcohol (*id.*, Annot. 425.0320, Nov. 28, 1969), rubbing alcohol (*id.*, Annot. 425.0780, Feb. 26, 1964), enema preparations (*id.*, Annot. 425.0380, May 15, 1985) and vitamins (*id.*, Annot. 425.0940, July 3, 1964.)

## CONCLUSION

PFC has met its burden of proof. The facts establish that Betadine meets the criteria set forth in section 6369. ■ One of the basic principles of statutory construction is that " 'the meaning of a statute must, in the first instance, be sought in the language in which the [statute] is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.' [Citations.]" (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665].)

That principle ineluctably leads to the conclusion that Betadine is an exempt medicine, pursuant to section 6369.

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1990. Arabian, J., did not participate therein.