[No. B048860. Second Dist., Div. One. July 29, 1991.]

TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Reid A. Evers, David M. Goldstein, Ott & Levine and Joel A. Levine for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—Defendant California State Board of Equalization (Board) appeals from the judgment for plaintiff Transamerica Occidental Life Insurance Company (TOLIC) entered after the trial court overruled the Board's demurrer and granted TOLIC's summary adjudication of issues motion. The sole issue on appeal is which of two tax rates in Revenue and Taxation Code section 12202 applies to insurance premiums for *non*pension and *non*profit-sharing plans exempt or qualified under section 501(a) of the United States Internal Revenue Code.[1] The trial court ruled that the lower rate applied to all premiums from policies exempt under section 501(a) whether or not the policies were pension or profit-sharing plans. We conclude the lower rate applies *only* to pension and profit-sharing plans exempt under section 501(a). As the trial court erred in applying the lower rate to TOLIC's *non*pension and *non*profit-sharing plans exempt under section 501(a), we reverse and direct the trial court to deny TOLIC's summary adjudication of issues motion, sustain the Board's demurrer without leave to amend, and enter judgment for the Board.

### FACTS

Subject to certain inapplicable exceptions, California taxes insurance companies annually on "the amount of gross premiums, less return premiums, received in such year by such insurer upon its business done in this State. . . ." (Rev. & Tax. Code, § 12221; Cal. Const., art. XIII, § 28, subd. (c).) These gross premiums received are called "the basis of the tax." (*Ibid.*)

Insurance companies pay taxes at different rates depending on the source of the premiums. "The rate of tax to be applied to the basis of the annual tax in respect to each year is 2.35 percent except the rate to be applied to the basis in respect to the years 1982, 1983, 1984, and 1985 is 2.33 percent *and except that as to gross premiums received upon policies or contracts issued in connection with a pension plan or profit-sharing plan exempt or qualified under Section 401(a), 403(b), 404, 408(b), or 501(a) of the United States Internal Revenue Code as they may be amended or renumbered from time to time*, the rate of tax shall be the percentage set forth below opposite each year: [¶] . . . [¶] 1969 and each year thereafter[ ] 0.50." (Rev. & Tax. Code, § 12202, italics added; see Cal. Const., art. XIII, § 28, subd. (d).)

In 1979-1982, inclusive, TOLIC voluntarily paid taxes at the higher rate prescribed in Revenue and Taxation Code section 12202 on premiums from

---

[1] Unless otherwise indicated, all further statutory references are to the Internal Revenue Code, which appears under title 26 of the United States Code.

nonpension and nonprofit-sharing plans exempt under section 501(a). As part of a 1983 audit, a Department of Insurance (hereinafter Insurance Department) staff attorney told TOLIC that the lower rate applied to premiums from all plans exempt under section 501(a). The Board applied the lower rate to premiums from TOLIC's section 501(a) exempt nonpension and nonprofit-sharing plans during the 1983 audit because, based on the Insurance Department staff attorney's advice, TOLIC listed them as subject to the lower rate.

TOLIC then filed claims requesting that the Board refund the difference between the higher and lower Revenue and Taxation Code section 12202 tax rates for taxes paid on premiums from nonpension and nonprofit-sharing plans exempt under section 501(a) for 1979-1982, inclusive. The Board denied TOLIC's claims, asserting that the lower Revenue and Taxation Code section 12202 tax rate applied only to premiums received from pension or profit-sharing plans which were federal tax exempt under section 501(a). After its administrative appeals also were denied, TOLIC filed this case, seeking the same refunds, plus interest, previously denied by the Board.

The Board demurred to the amended complaint, and TOLIC moved for summary adjudication of issues. During the consolidated hearing, TOLIC's counsel argued that "the correct way to read [Revenue and Taxation Code section 12202] is to say it refers to policies or contracts sold in connection with. [¶] And then you look at the various code sections and descriptions afterwards. [¶] So [Revenue and Taxation Code section 12202 should be read: '. . . P]olicies or contracts sold in connection with (1) pension or profit sharing plans which are qualified or are exempt under [section] 401(a); [(2)] policies or contracts which are issued in connection with [section] 403(b),['] et cetera. Until you get to section 501(a) . . . ." The trial court granted TOLIC's motion and overruled the Board's demurrer, holding that "[u]nder . . . Revenue and Taxation Code Section 12202, the rate of Tax imposed on premiums received on policies or contracts sold to Organizations which are exempt from federal income tax under . . . Section 501(a) is one half of one percent (.5%)." After the Board answered and the parties agreed that any resulting judgment should be for $20,433,812.33, the trial court entered judgment for TOLIC in that amount.

ISSUES

The Board contends the trial court erred in applying the lower tax rate in Revenue and Taxation Code section 12202 to TOLIC's premiums from *non*pension and *non*profit-sharing plans which were exempt under section

501(a). First, the Board claims TOLIC's earlier voluntary payment of the higher rate supports the Board's interpretation of Revenue and Taxation Code section 12202, and asserts it is not estopped from arguing the higher rate's applicability by the earlier contrary opinion of the Insurance Department counsel and its own conduct during the 1983 audit. Next, the Board argues that, because TOLIC's interpretation of Revenue and Taxation Code section 12202 provides an exemption from the higher rate, the statute must be strictly construed against TOLIC. Finally, the Board contends a plain reading of Revenue and Taxation Code section 12202 compels the conclusion that the phrase "issued in connection with a pension plan or profit-sharing plan" modifies *all* the listed federal tax code sections, and, in any event, TOLIC's statutory construction and history do not support TOLIC's interpretation.

TOLIC contends that the Insurance Department's and the Board's earlier opinion that the lower rate applied to premiums from the policies at issue here supports TOLIC's interpretation of Revenue and Taxation Code section 12202, and that, because the section imposes a tax, it must be strictly construed against the Board. Finally, TOLIC argues that, because of the subject matter covered by the Internal Revenue Code sections listed in Revenue and Taxation Code section 12202, the phrase "issued in connection with a pension plan or profit-sharing plan" modifies only "Section 401(a)," and not the other listed sections, including section 501(a).

## DISCUSSION

Preliminarily, we note that the facts are undisputed, and that the procedures regarding summary adjudication of issues (Code Civ. Proc., § 437c, subd. (f)) are the same as those governing summary judgment. (See *Haskell* v. *Carli* (1987) 195 Cal.App.3d 124, 130 [240 Cal.Rptr. 439].) Although the parties did not address the applicable appellate review standard, they correctly assume that, after examining the facts before the trial judge on a summary judgment motion, we independently determine their effect as a matter of law. (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 440-442 [186 Cal.Rptr. 357].)

Despite this independent review, we apply the same legal standard as the trial court, which must grant summary judgment if no triable issue exists as to a material fact, and if the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Emphasizing triable issues rather than disputed facts, summary judgment law turns on issue finding rather than issue determination. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) However, the trial court's

stated reasons for its ruling do not bind us. We review the ruling, not its rationale. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

TOLIC first voluntarily paid the higher rate. Later, during the 1983 audit, the Insurance Department counsel advised TOLIC that the lower rate applied to premiums from the policies at issue here. As part of the 1983 audit, the Board applied the lower rate to premiums from the disputed policies because TOLIC reported them as subject to the lower rate. Administratively, and consistent with its position throughout this case, the Board rejected TOLIC's argument. Each side now argues that its opponent's reversal of field supports its position, and should be considered by us in interpreting Revenue and Taxation Code section 12202. (Cf. *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 126 [100 Cal.Rptr. 69] [" 'Failure of any interested party to challenge the board's construction over many years is a factor entitled to much weight. "Not lightly vacated is the verdict of quiescent years." [Citation.]' "], with *American Hospital Supply Corp.* v. *State Bd. of Equalization* (1985) 169 Cal.App.3d 1088, 1092 [215 Cal.Rptr. 744] ["Administrative interpretation of a statute by the agency charged with its enforcement is entitled to great weight unless shown to be clearly erroneous or unauthorized. [Citations.]"].)

On balance, we think these factors, while not dispositive, favor the Board. Assuming the Insurance Department's staff counsel was authorized to interpret Revenue and Taxation Code section 12202, and that the Insurance Department could bind the Board, the Board applied the lower rate during the 1983 audit only because TOLIC, in reliance on the Insurance Department staff counsel's advice, listed the premiums from the disputed policies as subject to the lower rate. Once TOLIC formally sought a refund, the Board consistently maintained that the higher rate applied to premiums from the policies at issue here. On the other hand, TOLIC voluntarily paid the higher rate for several years before asserting its present position.

Further, the Board correctly argues, and TOLIC does not dispute, that the Insurance Department counsel's opinion that the lower tax rate in Revenue and Taxation Code section 12202 applied to premiums from the policies at issue here does not estop the Board from asserting the applicability of the higher rate. ■ Although equitable estoppel may apply to government actions where justice and right so require, "estoppel will not be applied against the government if the result would be to nullify a strong rule of policy adopted for the benefit of the public [citations] or to contravene directly any statutory or constitutional limitations. [Citation.]" (*People* ex

rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 551 [210 Cal.Rptr. 695]; see *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].)

Specifically, "the state is not estopped from collecting a tax which was due and owing, even though the state's representatives may have previously adopted an incorrect interpretation of the law and advised the public that no taxes would become due on a particular transaction or transactions. [Citation.] Under well-settled rules of law state officers and state agencies have no power to estop the state from collecting a validly owed tax." (*Fischbach & Moore, Inc.* v. *State Bd. of Equalization* (1981) 117 Cal.App.3d 627, 632 [172 Cal.Rptr. 923].) As discussed above, the Board (as opposed to the Insurance Department) did not tell TOLIC that the lower rate applied, but merely did not object when TOLIC applied the lower rate as part of TOLIC's voluminous response to the 1983 audit. Finally, TOLIC voluntarily paid the higher tax before receiving and without relying on any contrary advice from the government. Thus, TOLIC did not rely to its detriment on the government's conduct and estoppel would not lie in any event. (*City of Long Beach* v. *Mansell, supra*, 3 Cal.3d at p. 498, fn. 32; *People* ex rel. *Franchise Tax Bd.* v. *Superior Court, supra*, 164 Cal.App.3d at pp. 552-555.)

■ Next, the Board asserts that Revenue and Taxation Code section 12202 must be strictly construed against TOLIC because TOLIC seeks an exemption from the otherwise applicable higher tax rate. "The Board correctly urges the following propositions: the burden is on the taxpayer claiming an exemption to show entitlement to the exemption. (Rev. & Tax. Code, § 6091.) Doubt as to the applicability of the exemption is to be resolved against the exemption. (*Estate of Simpson* (1954) 43 Cal.2d 594, 602 [275 P.2d 467, 47 A.L.R.2d 991]; *Sutter Hospital* v. *City of Sacramento* (1952) 39 Cal.2d 33, 39 [244 P.2d 390]; *Hotel Del Coronado Corp.* v. *State Board of Equalization* (1971) 15 Cal.App.3d 612, 617 [92 Cal.Rptr. 456].)" (*American Hospital Supply Corp.* v. *State Bd. of Equalization, supra*, 169 Cal.App.3d at pp. 1091-1092.) TOLIC does not dispute these rules but claims Revenue and Taxation Code section 12202 imposes a tax, and that "[l]aws imposing taxes are *in invitum* and are to be strictly construed in favor of the taxpayer. [Citations.]" (*Barker Bros., Inc.* v. *Los Angeles* (1938) 10 Cal.2d 603, 608 [76 P.2d 97].)

The Board is correct. Revenue and Taxation Code section 12202 concededly imposes taxes on insurance premiums from the policies at issue here. The section specifically imposes the higher rate on all insurance premiums, except for premiums from certain listed excepted policies. Premiums from

the excepted policies still are taxed, but at the lower rate. Thus, even limiting our analysis to Revenue and Taxation Code section 12202, if TOLIC prevailed, it still would pay tax on the subject premiums. However, California Constitution, article XIII, section 28, enacted in 1974 and last amended in 1976, created a comprehensive scheme for the taxation of insurance companies. Subdivisions (b) and (c) of that section define "annual tax" and "basis" identically with Revenue and Taxation Code section 12202, and subdivision (d) provides: "The rate of the tax to be applied to the basis of the annual tax in respect to each year is 2.35 percent." (Cal. Const., art. XIII, § 28 subd. (d).) Thus, even if Revenue and Taxation Code section 12202 did not exist, TOLIC would pay the higher rate on these premiums. Because TOLIC seeks a statutorily created exemption from the otherwise applicable higher rate, we construe Revenue and Taxation Code section 12202 strictly against it. (See *American Hospital Supply Corp.* v. *State Bd. of Equalization, supra,* 169 Cal.App.3d 1088; *National Aircraft Leasing, Ltd.* v. *State Bd. of Equalization* (1979) 90 Cal.App.3d 549 [153 Cal.Rptr. 400]; *Garrett Corp.* v. *State Board of Equal.* (1961) 189 Cal.App.2d 504 [11 Cal.Rptr. 421] [businesses sought exemptions from sales and use taxes for revenue from various sources; courts construed applicable statutes strictly against the businesses although, if correct, they would pay no tax].)

In construing Revenue and Taxation Code section 12202, we must "simply . . . ascertain and declare what is in terms or in substance contained therein, not . . . insert what has been omitted, or . . . omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.) ▉ "It is a fundamental rule of statutory construction that the court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. *(People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) In order to determine that intent, the court must first look to the words of the statute itself. *(Ibid.)* When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. *(Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)" *(Wiley* v. *Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 191 [269 Cal.Rptr. 240].) "One of the basic principles of statutory construction is that '"the meaning of a statute must, in the first instance, be sought in the language in which the [statute] is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." [Citations.]' *(Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438.)" *(Purdue Frederick Co.* v. *State Bd. of Equalization* (1990) 218 Cal.App.3d 1021, 1029 [267 Cal.Rptr. 482].)

■ Thus, in construing the statute, we turn to underlying legislative history only if the plain statutory language, read in context and giving meaning to each word and phrase (*Soby* v. *Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 555, 557 [102 Cal.Rptr. 727]), is unclear. Moreover, " '[o]ne who contends that a provision of an act must not be applied according to the natural or customary purport of its language must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning.' (2A Sands, Statutes and Statutory Construction (4th ed. of Sutherland, Statutory Construction, 1973) § 46.01, p. 49.)" (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665].)

■ The Board's construction of Revenue and Taxation Code section 12202 is the only interpretation consistent with the statute's plain meaning. As written, the phrase "a pension plan or profit-sharing plan" unequivocally modifies "exempt or qualified under Section 401(a), 403(b), 404, 408(b), or 501(a) of the United States Internal Revenue Code as they may be amended or renumbered from time to time . . . ." (Rev. & Tax. Code, § 12202.) TOLIC's construction could be correct only if the relevant portion of Revenue and Taxation Code section 12202 read, "except as to gross premiums received upon policies or contracts issued in connection with a pension plan or profit-sharing plan exempt or qualified under Section 401(a) of the United States Internal Revenue Code, *or* in connection with *any* plan exempt or qualified under Sections 403(b), 404, 408(b), or *501(a)* of the United States Internal Revenue Code as they may be amended from time to time . . . ." TOLIC expressly urged precisely this interpretation on the trial court. Of course, the statute is not written as TOLIC would have us construe it, nor, as written, is it facially ambiguous.

TOLIC's position is based on the following factors: 1) when amended in 1959, Revenue and Taxation Code section 12256 (Rev. and Tax. Code, § 12202's predecessor) listed only sections 401(a), 404, and 501(a) as Internal Revenue Code sections under which plans could be exempt or qualified (Rev. and Tax. Code, § 12202 received its current number in 1961); and 2) in the past, the various enumerated Internal Revenue Code sections contained references to identical plans, some of which were not directly pension or profit-sharing plans. (All the listed Internal Revenue Code sections subsequently were amended, and none now are completely duplicative. All the sections directly or indirectly relate to group or individual pension, retirement, or profit-sharing plans.) Without reference to any California statutes or legislative history, TOLIC concludes that, since some plans are included in

both sections 401(a) and 501(a), and since not all plans covered by the listed Internal Revenue Code sections are expressly pension or profit-sharing plans, its interpretation is correct because otherwise some of the section references in the statute are redundant.

TOLIC's contention lacks merit. First, as discussed above, nothing in the statute's express language suggests this contrived construction. The Legislature did not choose to write Revenue and Taxation Code section 12202 as TOLIC construes it. Second, TOLIC concedes that subsequent amendments to section 501(a) have added references to additional types of pension and profit-sharing related plans not included in section 401(a). TOLIC argues that we must find a redundancy based solely on the plans covered by sections 401(a) and 501(a) as written in 1959, and must ignore the later amendments which include some plans under section 501(a) which are not covered under section 401(a). However, we cannot ignore those amendments in construing Revenue and Taxation Code section 12202 because it expressly provides that pension and profit-sharing plans are exempt under the enumerated Internal Revenue Code sections "as they may be amended or renumbered from time to time . . . ." Thus, the two Internal Revenue Code sections are not duplicative. Third, TOLIC's argument is based exclusively on construing Revenue and Taxation Code section 12202 contrary to its express language. TOLIC provided no legislative history supporting its claim that the Legislature intended the result sought by TOLIC. TOLIC does not claim the statute is "ambiguous," thus requiring an analysis of underlying legislative intent. TOLIC merely argues that Revenue and Taxation Code section 12202's express language requires us to adopt its statutory interpretation. That interpretation requires us to conclude that plans are eligible for the lower rate based exclusively on since modified Internal Revenue Code definitions as frozen in 1959 and ignore express contrary statutory language.[2]

---

[2]Although our analysis does not require a review of legislative history, we note that the 1959 amendment to former Revenue and Taxation Code section 12256 was sponsored by Occidental Life Insurance Company, one of TOLIC's former corporate incarnations, to permit insurance companies to compete with banks and trust companies in offering pension and profit-sharing plans. (See July 9, 1959, InterDepartmental Communication from the Atty. Gen. to then Governor Edmund G. Brown, p. 2; June 23, 1959, InterDepartmental Communication from the Dept. of Finance to Governor Brown; and Bill Mem. dated July 14, 1959, from Julian Beck to Governor Brown, all regarding Assem. Bill No. 1414, 1959 Reg. Sess.) According to its sponsor, the Association of California Life Insurance Companies, the 1968 amendment was designed to add additional Internal Revenue Code sections to those already listed, so that tax-sheltered annuity pension contracts issued to public school teachers and employees also would have their premiums taxed at the lower rate. (See Aug. 1, 1968, letter and accompanying background statement supporting Assem. Bill No. 1483, 1968 Reg. Sess. from the Association to then Governor Ronald Reagan.) Finally the 1976 amend-

Because of the above undisputed rules of statutory construction, the requirement that this exemption from the higher rate be construed strictly against TOLIC, TOLIC's initial voluntary payment of the higher rate, and the fact that TOLIC's argument is based exclusively on an unsupportable interpretation of Revenue and Taxation Code section 12202's express language, we reject TOLIC's contention. We conclude the trial court erred in adopting TOLIC's and rejecting the Board's construction of Revenue and Taxation Code section 12202. We reverse the judgment and remand the matter to the trial court with instructions that it deny TOLIC's summary adjudication of issues motion, sustain the Board's demurrer without leave to amend, and enter judgment for the Board.

### DISPOSITION

We reverse the judgment. The matter is remanded to the trial court with instructions that it deny TOLIC's summary adjudication of issues motion, sustain the Board's demurrer without leave to amend, and enter judgment for the Board.

The Board is entitled to its costs on appeal.

Spencer, P. J., and Devich, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 31, 1991.

---

ment was designed to conform California law to the newly enacted Employee Retirement Income Security Act of 1974. Thus, all these amendments were designed to encourage the marketability and availability of pension and profit-sharing plans by taxing their proceeds at a lower rate. This legislative history confirms our conclusion regarding the statute's plain meaning.