[No. F032045. Fifth Dist. Apr. 28, 2000.]

N. T. HILL, Plaintiff, Cross-defendant and Appellant, v.
CITY OF CLOVIS, Defendant, Cross-complainant and Respondent;
DEVELOPERS INSURANCE COMPANY, Cross-defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**Counsel**

Motschiedler, Michaelides & Wishon and Barbara A. McAuliffe for Plaintiff, Cross-defendant and Appellant and for Cross-defendant and Appellant.

Lozano, Smith, Smith, Woliver & Behrens, Lozano Smith, Jerome M. Behrens, Thomas J. Riggs and Christine A. Goodrich for Defendant, Cross-complainant and Respondent.

## OPINION

**BUCKLEY, J.**—This is the third appeal arising out of a dispute over developer fees and obligations between appellant N. T. Hill (Hill) and respondent City of Clovis (Clovis). Developers Insurance Company (Developers), which issued the construction bond in this case, is also a party to the appeal. The two prior appeals (Nos. F025972 and F026809) were dismissed on procedural grounds on April 21, 1998.

### STATEMENT OF FACTS AND EARLIER PROCEDURAL HISTORY[1]

On February 5, 1990, Clovis entered into a "Subdivision Agreement" for tract No. 4154 with subdivider William R. Tatham, Jr. In relevant part, this agreement provided in paragraph 6(d): "Subdivider shall construct the center 32 feet of permanent paving plus median island with landscaping and irrigation on Temperance Avenue from the north limits of this tract to Shaw Avenue prior to final acceptance of this tract or prior to final map approval of any other phase of tentative tract 3980, whichever comes first. Construction plans for the work shall be submitted prior to or concurrently with the final map submittal for the next phase of this tract but not later than March 1, 1990. The center travel lane fee for the next phase will be credited based on the actual construction cost of the center 24 feet plus median island, landscaping and irrigation."

Soon thereafter Tatham assigned his interest in the February 1990 Subdivision Agreement to Hill.

In October 1990, Clovis and Hill entered into a "Subdivision Agreement" for tract No. 4176. Paragraph 6(d)(12) of this agreement referred to a deposit of $55,000 by Hill as a right-of-way acquisition fee. It is undisputed that the subject right-of-way pertained to the land on which the central travel lane improvements, referred to in the February 1990 agreement, would be constructed. The October 1990 agreement also related in paragraph (6)(e): "The right-of-way acquisition fee includes costs for the acquisition of land plus any legal and court costs. This fee is based on an estimate of land values in the area and any costs incurred by the City in the process of acquiring said

---

[1]For simplicity, we will adopt the recitation of facts set forth in our previous case of *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434 [73 Cal.Rptr.2d 638].

land. Once actual costs have been determined, the fee shall be adjusted with the City reimbursing any under credit and the Subdivider [Hill] paying any over credit to the City prior to final tract acceptance."

Under the terms of the October 1990 Subdivision Agreement, Clovis also gave Hill a $57,141.88 credit in fees for constructing the central travel lane improvements. Clovis and Hill further agreed, in paragraph 6(g): "The center travel lane fee adjustment is based upon estimated cost. Upon construction and prior to final tract improvement acceptance, the Subdivider shall submit a financial statement signed by himself and the contractor of the work, stating the actual cost. The credit will then be adjusted with the City reimbursing any under credit and the Subdivider paying any over credit to the City prior to final tract acceptance."

The final map for tract No. 4176 was approved on October 15, 1990. The final map for tract No. 4154 was approved on February 20, 1990.

It is undisputed that Hill thereafter developed both tract No. 4154 and tract No. 4176, known respectively as Silverton I and Silverton II, but did not construct the center travel lane improvements as anticipated by the two Subdivision Agreements.

In a second amended complaint, Hill sued for declaratory relief with respect to the status of the $55,000 deposit (first cause of action) and the $57,141.38 credit or fee adjustment (second cause of action). Hill additionally alleged a cause of action for breach of contract (third cause of action), claiming that Clovis had not performed its agreement to reimburse Hill for unrelated public road improvements Hill had constructed, and a cause of action (fourth cause of action) for a portion of Hill's costs expended in building a city park in Silverton II. In its fifth and final cause of action, Hill contended it was entitled to statutory attorney fees.

Clovis cross-complained against Hill and Developers. As a first cause of action, Clovis alleged Hill breached the February 1990 Subdivision Agreement by failing to construct the center travel lane improvements. Clovis claimed damages of $32,257.16, which it said it had paid to a third party to build the improvements; Clovis alleged that "[i]f Hill obtains the relief requested in its complaint herein, then this amount is increased to $136,490.50." In a second cause of action, Clovis charged that Hill had breached the October 1990 Subdivision Agreement by failing to (1) construct the center travel lane improvements or to pay the city for the $57,141.88 it had credited Hill for the construction; and (2) pay the additional costs for the right-of-way acquisition. In a third cause of action,

Clovis alleged Hill's performance under the terms of both Subdivision Agreements had been negligently done. As its damages, Clovis asked for the $32,257.16 it paid for construction costs, the $57,141.88 issued in credits to Hill, and whatever additional costs it could prove it spent in acquiring the right-of-way. In its fourth and final cause of action, Clovis sued on Hill's performance bond.

Shortly before trial was set to commence, Hill and Clovis filed competing motions under Code of Civil Procedure section 437c. Hill sought summary adjudication of various issues raised by its complaint. Clovis sought summary judgment in its favor on Hill's complaint and summary adjudication in its favor on the second and fourth causes of action of the city's cross-complaint. Clovis's motion made no mention of the first and third causes of action of its cross-complaint.

In its moving papers filed in support of its Code of Civil Procedure section 437c motion, Hill contended that Clovis had belatedly acquired a right-of-way to the land on which the center travel lane improvements were to be located, thereby excusing Hill from any obligation to construct them. The developer relied on the language of Government Code section 66462.5.[2]

Clovis argued that Hill's reliance on the Government Code provision was misplaced. According to the city, it did not condition the tentative tract map on construction of the center travel lane nor did it delay or refuse final map approval for tract No. 4154 and tract No. 4176. It further maintained that it gave Hill credit for the unrelated public road improvements identified in Hill's third cause of action but applied the credit to offset the balance Clovis believed Hill owed the city for the right-of-way acquisition and for the $57,141.88 credit the city gave Hill to build the center travel lane improvements.

---

[2]All further references are to the Government Code unless otherwise noted. Section 66462.5 provides in pertinent part:

"A city . . . shall not postpone or refuse approval of a final map because the subdivider has failed to meet a tentative map condition which requires the subdivider to construct or install offsite improvements on land in which neither the subdivider nor the local agency has sufficient title or interest, including an easement or license, at the time the tentative or final map is filed with the local agency, to permit the improvements to be made. In such cases, the city . . . shall, within 120 days of the filing of the final map, pursuant to Section 66457, acquire by negotiation or commence proceedings . . . to acquire an interest in the land which will permit the improvements to be made, including proceedings for immediate possession of the property . . . . In the event a city . . . fails to meet the 120-day time limitation, the condition for construction of offsite improvements shall be conclusively deemed to be waived. Prior to approval of the final map the city . . . may require the subdivider to enter into an agreement to complete the improvements pursuant to Section 66462 at such time as the city . . . acquires an interest in the land which will permit the improvements to be made.

"Nothing in this section precludes a city . . . from requiring a subdivider to pay the cost of acquiring offsite real property interests required in connection with a subdivision."

After a hearing on the parties' motions, the trial court granted summary adjudication in favor of Clovis on Hill's first, second and fifth causes of action and otherwise denied both motions. The court concluded that (1) section 66462.5 did not apply to the facts of the case; (2) Clovis was entitled to keep the $55,000 deposit; (3) Hill must reimburse Clovis for the $57,141.88 credit issued by the city; and (4) Hill was not entitled to statutory legal fees. The court found that triable issues of fact existed pertaining to Hill's third and fourth causes of action and Clovis's second and fourth causes of action.

Thereafter, the parties filed an "ENTRY OF JUDGMENT ON STIPULATED FACTS," along with a "SEPARATE JUDGMENT ON STIPULATED FACTS," prepared for the trial court's signature. According to the separate judgment, Hill, Clovis and Developers "stipulated to facts that judgment be entered." The stipulated facts included:

"Given the law and motion Court's interpretation on summary adjudication, which will be binding at trial, Hill recognizes that it will not prevail on the City's claim for the right-of-acquisition costs.[3] That amount is $104,135.60. Hill therefore stipulates to judgment on the City's cross-complaint. On the City's cross-complaint, Hill will have judgment entered against it on the second cause of action in the amount of $106,277.48 ($104,135.60 − $55,000 + $57,141.88), plus prejudgment interest, of which Developers is jointly liable under the fourth cause of action in the amount of $57,141.88 plus prejudgment interest. Developers will have judgment entered against it on the fourth cause of action in the amount of $57,141.88 plus prejudgment interest.

"On May 25, 1993, Hill and the City entered into an agreement (the 'Reimbursable Agreement') which required Hill to construct public road improvements across a park owned by the City at Peach and Alluvial Avenues. . . . Hill performed all work required by the Reimbursable Agreement and recorded a Notice of Completion on June 7, 1993. The parties now agree that the amount Hill is eligible for under the Reimbursable Agreement is $102,915.56. On the third cause of action of Hill's second amended complaint, the City will have judgment entered against it in the amount of $102,915.56, plus prejudgment interest.

"Pursuant to the Silverton II Agreement, Hill constructed a City park ('Silverton II Park') as part of the development of Silverton II. Since the Park benefited property in addition to Silverton II, Clovis agreed to collect

---

[3] In a footnote, the parties noted: "Hill and Developers disagree with the Court's interpretation and intends [sic] to appeal the issue after judgment."

contributions from the developers of the other benefiting subdivisions and reimburse Hill from the deposit for eligible costs exceeding Hill's proportionate share of the deposit. Clovis has received such funds from the other benefiting developers. Since the summary adjudication motion, Hill has presented adequate documentation of its costs to Clovis. Consequently, the amount of reimbursement under the Silverton II Agreement for which Hill is eligible is no longer in dispute and Hill is eligible for reimbursement in the amount of $30,000. Clovis delivered a check to Hill in the amount of $26,638.08. On the fourth cause of action of Hill's second amended complaint, the City will have judgment entered against it in the amount of $3,361.92, plus prejudgment interest.

"Regarding any reimbursement to Hill for the acquisition costs of the right-of-way, reimbursement determinations would be made according to the City's Major Street Development Ordinance."

This separate judgment also provided that:

"1. Hill shall have judgment entered against City for $106,277.48 ($102,915.56 + $3,361.92), plus prejudgment interest.

"2. City shall have judgment entered against Hill for $106,277.48, plus prejudgment interest, of which Developers is jointly liable for $57,141.88, and City will have judgment against Developers for $57,141.88, plus prejudgment interest.

"3. The parties shall offset their judgments.

"4. Costs, including attorneys fees, if any, as to any party pursuant to a timely filed, untaxed memo of costs and motion for Atty fees."

The trial court entered the separate judgment on April 8, 1996. Hill and Developers thereafter jointly filed a notice of appeal from this judgment.

Clovis then moved for an award of attorney fees based upon a term in the performance bond issued by Developers, claiming it was the prevailing party on the cause of action related to the performance bond. After a contested hearing, the trial court awarded $33,082.90 in fees and ordered each side to bear its own costs. A second appeal was filed from this order on September 2, 1996.

LATER PROCEDURAL HISTORY

The first appeal, No. F025972, was dismissed on April 21, 1998, in *Hill v. City of Clovis, supra,* 63 Cal.App.4th 434, which vacated the stipulated

judgment and dismissed the appeal because the stipulated judgment did not finally resolve all issues between the parties and was therefore not an appealable order. By our opinion filed the same date in case No. F026809, the second appeal was also dismissed with directions to vacate the order granting attorney fees because the underlying stipulated judgment had been vacated by our opinion in *Hill*.

As a result, the parties returned to Fresno County Superior Court and sought to finalize the matter for purposes of perfecting an appeal. The parties added provisions to the stipulated judgment which resolved the first and third causes of action in the city's cross-complaint, which had not been addressed earlier. As to the first cause of action, Hill stipulated to judgment against it. The city dismissed its third cause of action with prejudice. The trial court entered judgment on September 1, 1998. Having finally resolved all issues, they now seek review of both the underlying substantive issues and the award of attorney fees.

### DISCUSSION

I. *Section 66462.5*

Section 66462.5 is part of the state's Subdivision Map Act (Act). (§ 66410 et seq.) The Act is the primary regulatory control governing the division of property in California and generally requires that a subdivider of property design the subdivision in conformity with applicable general and specific plans and to construct public improvements in connection with the subdivision. The purpose of the Act is to coordinate planning within the community and to assure proper improvements are made so as not to place an undue burden on the taxpayers. (*Physical Division of Real Property in Partition Action*, 64 Ops.Cal.Atty.Gen. 762, 765 (1981); *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 748 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93].) Under the Act, the requirements of the subdivider are enumerated, as are the corresponding duties of the local governing body. In many portions of the Act, specific time limits are set for action, and correlating consequences are established for failure to meet those time limits. (See §§ 66451.4, 66452.2, 66452.4.)

██ Section 66462.5 contains such a time limit, one which places an obligation on the local governing body to acquire an interest in land upon which the subdivider is obligated to build improvements within 120 days of the filing of the final subdivision map. The failure to abide by the statutory time limit results in a waiver of the obligation to construct the improvements. In this case, there is no question the city failed to acquire title to the

land on which the improvements were to be made within the time set by section 66462.5. Therefore, the only question is whether the section is applicable to the situation faced by the parties at the time the dispute arose. If so, the waiver provisions of the section would operate to relieve Hill of the obligation to construct the improvements. The issue raised on appeal is thus a narrow one involving the applicability of this statute.

The interpretation of a statute is a question of law and therefore subject to de novo review on appeal. (*Hansen Mechanical, Inc. v. Superior Court* (1995) 40 Cal.App.4th 722, 726-727 [47 Cal.Rptr.2d 47]; *Jefferson v. Compton Unified School Dist.* (1993) 14 Cal.App.4th 32, 37-38 [17 Cal.Rptr.2d 474].)

To ascertain the meaning of a statute, we begin with the language of the statute itself. When the language is clear, the court should apply its plain meaning. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1010 [78 Cal.Rptr.2d 272]; *Leroy T. v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665]; *Great Lake Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Section 66462.5 begins by prohibiting the local body from postponing or refusing approval of a final map because the subdivider has failed to meet a tentative map condition which requires construction of offsite improvements on land in which neither the local body nor the subdivider has sufficient title or interest. The statute goes on to state "In such cases, the city, county or city and county shall, within 120 days of the filing of the final map, . . . acquire by negotiation or commence proceedings pursuant to Title 7 . . . of the Code of Civil Procedure [eminent domain proceedings] to acquire an interest in the land which will permit the improvements to be made. . . ." The statute next provides that the failure to meet this time limit results in the conclusive waiver of the condition for construction of the off-site improvements. Hill argues the phrase "in such cases" applies to any case in which a condition requiring an off-site improvement is required and neither party holds sufficient title to the land. Clovis argues the phrase, as does the section, applies only to those cases in which the local body acts to postpone or refuse approval of a final map because the off-site improvements had not been completed. In the context of this dispute, the phrase "in such cases" results in an ambiguity that requires a closer look at the context of the language in question and the legislative history of the section.

A statute is to be construed so as to reach a reasonable result consistent with its legislative purpose, in light of the context of the legislation and its apparent objective. (*Cossack v. City of Los Angeles* (1974) 11

Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260].) In this case, both the legislative history and the context of the provision within the Act support Clovis's proffered interpretation.

During the subdivision process, the tentative map provides notice of the intended subdivision and sets into motion a series of events, which result in a coordinated planning effort. (§§ 66424.5, 66426; *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 652 [150 Cal.Rptr. 242, 586 P.2d 556]; *Trent Meredith, Inc. v. City of Oxnard* (1981) 114 Cal.App.3d 317, 325 [170 Cal.Rptr. 685].) After all certifications, approvals and reports have been obtained and all conditions identified and met, approval of a "final map" is sought. (§ 66433 et seq.) If the subdivider has not complied with the conditions of the tentative map, the local governmental body must refuse approval of the final map. (§ 66473.) Approval of the final map is an important step, which helps to perfect title for the subdivider. The final map, when approved, contains the record title information. (§§ 66434, 66436.) Delay in the approval of the final map causes multiple problems for the subdivider, including the possibility of the expiration of the tentative map. If the tentative map is allowed to expire, the approval process must be initiated again. If there has been a lapse of time between the approval of the tentative map and the final map, and the tentative map is allowed to expire, changes in zoning laws or legislative policies might mean significant burdens or barriers for the subdivider. (See §§ 66452.6, 66463.5.)

In 1982, the state Legislature proposed Assembly Bill No. 3425 to correct a perceived abuse of power under the Act by a local governmental body. Apparently a particular community withheld approval of a subdivider's final map because the subdivider was unable to complete an off-site improvement which was a condition of the tentative map when the local body failed to acquire sufficient title to the property on which the improvement was required. This was the catalyst for Assembly Bill No. 3425. (Assem. Com. on Local Government, Analysis of Assem. Bill No. 3425 (1981-1982 Reg. Sess.) as amended Apr. 29, 1982; Sen. Republican Caucus, Analysis of Assem. Bill No. 3425 (1981-1982 Reg. Sess.); Cal. Dept. of Housing & Community Development mem. (Aug. 3, 1982).)

The Assembly Committee on Local Government Report on Assembly Bill No. 3425 explains "AB 3425 addresses the above-discussed problem by prohibiting a city or county from refusing to act on a final map because the installation of off-site improvements has not been accomplished due to the fact that neither the subdivider or [*sic*] the agency has acquired the necessary interest in the land to allow the installation of the improvements." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 3425, *supra*, at pp. 1-2.)

The committee reports acknowledge a local governmental body has two options under the Act in connection with required offsite improvements. One, it may require all improvements be completed before the final map is approved. Or two, it may approve the final map even though all required improvements have not been completed. It may choose the latter only if it secures a mutual agreement with the subdivider to complete the improvements as provided under the Act. (§ 66462.) Section 66462 provides for a mutual agreement between the local body and the subdivider for completion of the improvements and the posting of security to ensure the work is done. The concern that generated the enactment of section 66462.5 is that a city or county could choose the first option, requiring completion of all improvements before approval of the final map, even when completion is made impossible as a result of the local body's own failure to obtain sufficient title. The analysis of the Assembly Committee on Local Government notes a delay in approval of the final map could result in "substantial costs to the subdivider and may result in the expiration of the tentative map." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 3425, *supra*, at p. 1.)

The report further reads: "*In such cases*, the agency would be required, within 90 days of the filing of the final map, to either acquire by negotiation or commence eminent domain proceedings to acquire an interest in the land to permit the off-site improvements to be made . . . ." (Assem. Com. on Local Government, Analysis of Assem. Bill No. 3425, *supra*, at p. 2, italics added.)

The phrase "in such cases" is also used in the Senate Republican Caucus analysis in the same context. (Sen. Republican Caucus, Analysis of Assem. Bill No. 3425, *supra*, at p. 2.) At least as far as the phrase was used in the committee reports, it seems clear the phrase refers to the particular problem at hand and *its proposed resolution*—imposing a time limit for acquiring title in those cases in which a local body refuses to approve a final map because a subdivider has failed to complete off-site improvements and the failure to do so is the result of the local body's failure to acquire sufficient title.

■ Statements in a report of a legislative committee concerning the object and purpose of a statutory proposal that parallel a reasonable interpretation of the proposal should be followed. (*Beltone Electronics Corp. v. Superior Court* (1978) 87 Cal.App.3d 452, 455, fn. 1 [151 Cal.Rptr. 109].) ■ Here, the language of the reports directly parallels the language ultimately adopted by the Legislature. And, it is reasonable to interpret the language of section 66462.5 as limited to the circumstance addressed in the reports.

Our conclusion is also supported by the remaining language of the section. The last sentence of the first paragraph of section 66462.5, which follows the language at issue, provides "[p]*rior to approval of the final map* the city, county, or city and county may require the subdivider to enter into an agreement to complete the improvements pursuant to Section 66462 at such time as the city, county, or city and county acquires an interest in the land which will permit the improvements to be made." (Italics added.) This final section not only confirms that the Legislature understood there are two distinct options for dealing with uncompleted but required improvements, but emphasizes that section 66462.5 is relevant only in the situation in which approval of the final map is being delayed or refused. This is not the case here; both final maps were approved.

Appellants argue that this interpretation of the phrase would result in an unjust burden on the subdivider because a city could wait 10, 20 or more years to acquire the off-site property, then force development at a much greater expense and burden to the subdivider. Appellants add this would be contrary to the policy expressed in the Act, which according to appellants is to prevent dilatory conduct by the local body. We disagree. First, as stated above, the purpose of the Act is to promote coordinated planning and to ensure improvements without undue burden on the taxpayers, not to protect the subdivider or punish the local governmental body.

Second, in many cases, the statute assumes the local body and the subdivider are sophisticated parties capable of protecting their own interests. For example, section 66451.1 states that any of the time limits under the Act may be extended by "mutual consent." Section 66462 expressly provides for an agreement between the parties "upon mutually agreeable terms" to govern the completion of required improvements after approval of the final map. (§ 66462, subd. (a)(1).) This language converts the parties into business equals bound by a contract negotiated at arms' length. As Clovis correctly notes, the subdivider is free to insist upon a time limit as a term of the agreement, and one was negotiated in this case in both Subdivision Agreements. Although there is no specific term requiring Clovis to acquire the land before the agreed date, if Clovis by inaction interferes with Hill's ability to perform under the contract, this raises contractual issues for which there are legal remedies. Therefore, by limiting section 66462.5 to those instances in which approval of the final map is refused, this court does not impose an unjust burden on subdividers, nor does it create unreasonable consequences inconsistent with the legislative purpose. Indeed, by refusing to expand section 66462.5 as appellants advocate, the court will leave a carefully balanced legislative scheme intact. If further protection is needed against the abuse which appellants predict—unreasonable delay in acquiring title, the Legislature must act to grant it.

Based on the foregoing, we conclude the trial court correctly interpreted the statute consistent with its language and legislative history.

II. *Attorney Fees\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Costs to respondent.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied May 22, 2000.

---

*See footnote, *ante*, page 438.