Filed 12/10/25  Conservatorship of J.G. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of J.G. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>J.G.,<br><br>        Objector and Appellant. | A173234<br><br>(Contra Costa County<br>Super. Ct. No. P1000060) |

J.G. appeals from an order reappointing the Public Guardian of Contra Costa County as the conservator of her person pursuant to the Lanterman-Petris-Short Act (LPS).[1]  But she raises no challenge to that ruling, or to the trial court's subsequent determinations concerning her least restrictive placement; rather, she complains of earlier delays in placing her per a stipulation she concedes was "voided" by setbacks in her treatment.  We

---

[1] Welfare and Institutions Code, section 5000 et seq.  Undesignated statutory references are to the Welfare and Institutions Code.  The quoted portion of the factual background comes from our prior opinion, *Conservatorship of the Person of J.G.* (Apr. 24, 2023, A165316) [nonpub. opn.].  We take judicial notice of the record in that appeal.  (Evid. Code, §§ 452, 459.)

1

affirm the trial court's orders and decline to address J.G.'s arguments, which are not properly before us in this appeal.

## I. BACKGROUND

"J.G. (born in 1975) has been conserved since 2010. Prior to that time, she had over 210 mental health contacts with Contra Costa County. She began abusing drugs at 13 years of age, including crack, methamphetamine, LSD, alcohol, and marijuana. J.G. is wheelchair bound due to hip dysplasia from a car accident, which complicates her level of care." For the past several years, J.G. has been placed at Crestwood Manor in Fremont, a secured skilled nursing facility with specialized treatment program ("SNF-STP").

In 2023 and 2024, J.G. expressed to the trial court and counsel for the Public Guardian (county counsel) that she wished to be moved to a less restrictive board and care facility. J.G. agreed to the extension of her conservatorship on a temporary basis on the understanding that she would be referred to such facilities; however, the Public Guardian initially "was clear that [she] did not find Board and Care . . . to be [J.G.'s] least restrictive placement, but agreed [only] to make referrals." Several board and care facilities denied these referrals.

Nevertheless, in June 2024, county counsel "agree[d] to a board and care placement level." The Public Guardian continued to make referrals, but counsel reported over the course of several status hearings that J.G. was "very difficult to place" because of both her "behaviors and her physical needs." J.G. was waitlisted for referral reviews at multiple facilities.

During a status hearing in January 2025, county counsel expressed her belief that her client could only contact board and care facilities that "the County currently contracts with." J.G. objected. The trial court stated that J.G. "needs to be moved to the least restrictive placement level," and "[t]hat

2

may require the Public Guardian to look outside of contracts" considering "how difficult it has been to place [J.G.] given the lack of ADA-accommodating board and cares contracted by the County." The court "ask[ed] that a list be created that also includes facilities that may take out-of-county beds." County counsel objected to any order that her client prepare such a list, and the issue remained unresolved in advance of another status hearing scheduled for the end of January 2025.

Just before that hearing, major complications developed. J.G. was found unresponsive in the dining room at Crestwood Manor, and was hospitalized and administered Narcan to reverse an opioid overdose. According to Crestwood Manor staff, she later reported that she had obtained drugs from her mother and her mother's friend when they visited her. In the days following her overdose, J.G. asked for LSD, concealed medication beneath her molar instead of swallowing it as directed, expressed a preference to crush and inhale medication, and asked a nurse to purchase "uppers" for her. The Public Guardian filed a notice of change of placement level explaining that based on those developments, SNF-STP was J.G.'s least restrictive placement notwithstanding the parties' stipulation. J.G. objected to the change.

The Public Guardian also filed a petition for reappointment as J.G.'s LPS conservator. J.G. waived her right to a jury trial, and a bench trial was held in March 2025. After hearing the evidence and argument, the trial court found that J.G. had a mental health disorder, "specifically schizoaffective disorder bipolar type or, at a minimum, schizophrenia," and was gravely disabled. The court reappointed the Public Guardian as J.G.'s conservator. At a subsequent placement hearing, the court designated SNF-STP as J.G.'s least restrictive placement, finding that a board and care facility would not

3

be able to provide her with needed assistance "cloth[ing]" her "bottom half," and J.G. required "supervision" to ensure she did not suffer a similar crisis to "the January incident." The court emphasized that it "would be wholly derelict in [its] responsibilities" to "have [J.G.] step down at this time": "her treatment needs are such that . . . she just doesn't have the skill set yet to be able to safely survive" at "an unsecured facility." Still, the court expressed concern that Crestwood Manor might not be "the best fit," and directed the parties to make efforts "to determine whether there is a facility that might better address [J.G.'s] treatment needs," including both her psychiatric needs and "maybe more so her pain management substance use needs."

Despite the trial court's invitation, at a status hearing a few weeks later, J.G. and counsel for both parties reported that "placement [was] not at issue." (Capitalization omitted.) The court confirmed J.G.'s placement and level of placement.

J.G. appealed from the trial court's order reappointing the Public Guardian as her conservator (but not from the placement orders). Meanwhile, she filed a petition for another placement hearing, which the trial court granted. The placement hearing is scheduled for January 5, 2026.[2]

_____

[2] We grant the Public Guardian's request for judicial notice of J.G.'s October 2025 petition for a placement hearing and of the trial court's November 2025 minute order scheduling the hearing. The Public Guardian moves to dismiss the present appeal as moot in light of the upcoming placement hearing. However, J.G.'s notice of appeal is addressed to the trial court's order reappointing the Public Guardian as her conservator, which will not be revisited at the placement hearing. And as we will discuss, J.G.'s appellate briefing challenges the earlier delay in placing her with a board and care facility, not the merits of any determination concerning her least restrictive placement. Consequently, the court's re-assessment of J.G.'s least restrictive placement will not itself impact the justiciability of her appeal. We accordingly deny the motion to dismiss.

4

## II. DISCUSSION

On appeal, J.G. does not challenge the trial court's rulings reappointing the Public Guardian as her conservator and finding that SNF-STP was her least restrictive placement when the court last considered that issue. Rather, she claims the court "abused its discretion and abdicated its authority" by "accepting" the Public Guardian's "limited scope of investigation" concerning board and care facilities, and the delay in placing her in one violated her right to due process. (Capitalization and boldface omitted.) There are several problems with J.G.'s arguments.

First, J.G. mischaracterizes the record by claiming that the trial court "accepted" the Public Guardian's position that she should only be required to investigate board and care facilities with which the County already had a contract. In fact, this issue did not come up until January 2025, and the court suggested it was not inclined to accept the Public Guardian's position. The issue had not been resolved when J.G. overdosed later that same month—which she concedes "voided the [parties'] stipulation that she was ready for placement in a board and care facility" and sent the proceedings down a different path. Consequently, there is no trial court ruling concerning out-of-contract facilities that is ripe for our review; no appealable order resulted from the colloquy on this subject. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 [ripeness requirement prevents advisory opinions, recognizing that decisions are best rendered " 'in the context of an actual set of facts so . . . issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy' "]; *People v. Hatt* (2018) 20 Cal.App.5th 321, 324–325 [where trial court solicited briefing and continued the matter, its tentative ruling was not final and was not properly before the Court of

5

Appeal]; see also *Save Laurel Way v. City of Redwood City* (2017) 14 Cal.App.5th 1005, 1015, fn. 9 ["[j]usticiability is present in every case" and the issue of ripeness was fairly included in appellant's merits argument].)

As to the broader delay in placing J.G. in a board and care facility, the issue is beyond the scope of her appeal. J.G.'s notice of appeal refers only to the trial court's order reappointing the Public Guardian as her conservator; with consent from the Public Guardian, we liberally construe it to include the court's subsequent placement orders as well. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 [" ' "notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced" ' "].) None of these rulings concern J.G.'s placement in a board and care facility. As to this issue, J.G.'s notice of appeal fails to "serve[] its basic function" to provide notice "of what order or judgment" she seeks review of. (*Id.* at p. 883.)

Beyond these other problems, any issues with placing J.G. in a board and care facility are presently moot. While a new placement hearing has been scheduled, it would be speculative to assume the trial court will find J.G. should be placed in such a facility despite her still-recent overdose. Even if it does, there may be new information about in-contract facilities that had waitlisted J.G. that could obviate the need to revisit the adequacy of the Public Guardian's investigation. Meanwhile, there is no evidence that the difficulties in finding a board and care facility suitable for J.G. (which seem to have resulted from her unique combination of needs) have impacted anyone but her. In sum, the issues raised by J.G. are moot and do not appear likely to reoccur, so we would decline to consider them even if they were properly before us in this appeal. (See *In re David B.* (2017) 12 Cal.App.5th

6

633, 654 [appellate court may decide an otherwise moot appeal, but "only if a ruling on the merits will affect future proceedings between the parties or . . . future litigation generally"; declining to exercise jurisdiction to address "fact-specific questions" in moot appeal].)[3]

Finally, in the absence of any claim or reasoned argument by J.G. that the trial court's March 2025 order reappointing the Public Guardian as her conservator or its April 2025 placement orders were in error, such argument is forfeited. (*Oakland Unified School Dist. v. Public Employment Relations Bd.* (2025) 112 Cal.App.5th 725, 763 [failure to present reasoned argument to support a claim of error forfeits the claim on appeal].) We will affirm those orders. In doing so, we do not dismiss concerns that a conservatee who proves difficult to place could experience undue delays in an overly restrictive placement; such delays are alarming.[4] But those concerns are best addressed in the first instance through a fully litigated request for relief from the trial court. With no indication that the trial court here neglected the delays in J.G.'s case, and without a more developed factual record or any evidence that

---

[3] We thus deny, as irrelevant, J.G.'s request for judicial notice of a purported list of "non-record specific placements and resources available to the Public Guardian for investigation." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [denying judicial notice of irrelevant materials].) We likewise deny J.G.'s alternative request to consider the list as evidence under Code of Civil Procedure section 909.

[4] We note county counsel's representations to the court that prior to trial, five facilities denied placement to J.G.

the issue J.G. experienced is likely to reoccur for her or anyone else, it is not appropriate for us to consider the issue now.

## III. DISPOSITION

The trial court's March 2025 order reappointing the Public Guardian as the conservator of J.G.'s person and its related April 2025 placement orders are affirmed.

_____
SMILEY, J.

WE CONCUR:


_____
HUMES, P. J.


_____
LANGHORNE WILSON, J.

*Conservatorship of the Person of J.G.* / A173234